UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MISTIE A. BRIGGS,

                       Plaintiff,

           V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                   Defendant.
_____

**REPORT AND
RECOMMENDATION**

09-CV-1422
(FJS/VEB)

## I. INTRODUCTION

In May of 2007, Plaintiff Mistie A. Briggs applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she has been disabled since birth due to a physical impairment and mental retardation.  The Commissioner of Social Security denied Plaintiff's applications. Plaintiff, through her attorneys, Conboy McKay Bachman & Kendall, LLP, Peter L. Walton, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On December 22, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 15).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for DIB and SSI benefits on May 24, 2007, alleging disability beginning as of April 23, 1985, her date of birth. (T at 12).[1]  The application was denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on July 25, 2008, in Syracuse, New York, before ALJ F. Patrick Flanagan.  Plaintiff appeared with her counsel and testified. (T at 21-56).

On October 8, 2008, ALJ Flanagan issued a decision denying Plaintiff's applications. (T at 12-20).  The ALJ's decision became the Commissioner's final decision on October 30, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

Plaintiff, through counsel, timely commenced this action on December 21, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  The Commissioner interposed an Answer on April 14, 2010. (Docket No. 8).  Plaintiff filed a supporting Brief on June 1, 2010. (Docket No. 11).  The Commissioner filed a Brief in opposition on July 15, 2010. (Docket No. 14).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted, Plaintiff's motion be denied, and that this case be dismissed.

---

[1] Citations to "T" refer to the Administrative Transcript.  (Docket No. 9).

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[2]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at

---

[2]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2009.  (T at 14).  He found that Plaintiff had not engaged in substantial gainful activity since April 23, 1985, her date of birth and the alleged onset date. (T at 14).  The ALJ determined that Plaintiff had the following medically determinable impairment considered "severe" under the Social Security Act: mental retardation. (T at 15).  However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 15).

The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of work, at all exertional levels, but was limited to the performance of simple, routine, repetitive work (*i.e.*, unskilled work). (T at 17).  The ALJ found that Plaintiff had no past relevant work. (T at 18).

The ALJ considered Plaintiff's age (22 years old on the date of application),

education (limited), work experience, and RFC, and concluded that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (T at 18-19). Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined under the Act, from the alleged onset date through the date of his decision. (T at 19). As noted above, the ALJ's decision became the Commissioner's final decision on October 30, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

### 2.      Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers five (5) principal arguments in support of this position. First, Plaintiff contends that the ALJ failed to properly assess the severity of her foot impairment. Second, Plaintiff argues that the ALJ did not correctly evaluate her mental impairment. Third, Plaintiff contends that the ALJ failed to properly evaluate her credibility. Fourth, Plaintiff argues that ALJ's conclusion that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform was not supported by substantial evidence. Fifth, she asserts that the Appeals Council should have considered supplemental information as part of its review. This Court will address each argument in turn.

### a.      Severity of Foot Impairment

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding,

carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

In the present case, Plaintiff argues that her chronic problem with her feet rose to the level of a severe impairment.  Plaintiff testified that she was born with club feet, which swell after she stands for about four hours, making it very difficult to walk. (T at 34). Plaintiff explained that problems with her feet prevent her from standing for long periods of time. (T at 33).  She described tingling and pain in her feet, lasting for two to three days at a time. (T at 48).  Plaintiff testified that she experiences foot pain on a daily basis and explained that it is brought on by work. (T at 48-49).  Dr. Frederick Lemley of Syracuse Orthopedic Specialists examined Plaintiff and referenced her complaints of bilateral foot

7

pain and history of clubbed feet. (T at 234, 236).

The ALJ noted that the record reflected "a history of bilateral club foot deformities with current foot pain," but found that the condition did not have any adverse effect on Plaintiff's ability to perform work-related functions. (T at 15).  As such, the ALJ found that Plaintiff's foot problems did not rise to the level of a severe impairment.

This Court finds that the ALJ's decision was supported by substantial evidence and in accord with applicable law.  The clinical findings of Dr. Lemley, the treating orthopedist, were largely benign and his overall assessment was that the impairment was minimal.  For example, he found no deformities of the forefoot or lesser toes and minimal deformity secondary to clubfoot. (T at 236).  X-ray results showed "some degree of metatarsus adductus, increased intermetatarsal angle, and bunion deformity left greater than right." (T at 236).  However, Dr. Lemley opined that none of these conditions was likely to be a source of chronic pain. (T at 236).  Upon inspecting Plaintiff's feet, Dr. Lemley assessed that they looked like "normal plantigrade feet that function normally with good motion and overall normal symmetry." (T at 236).  Plaintiff asked Dr. Lemley whether her foot condition was disabling and he declined to make such an assessment. (T at 237).  Dr. Lemley's report indicated that Plaintiff was working part-time and described her "disability-work-school status" as follows: "[t]he patient remains at FULL duty." (T at 234, 237)(emphasis in original).

In addition, Plaintiff did not mention any foot problems to Dr. Richard Weiskopf, a consultative examiner, when asked to describe her disabling conditions. (T at 193-94).  Dr. Weiskopf indicated that Plaintiff performed many vigorous physical activities, including playing basketball, cooking, cleaning, laundry, and shopping. (T at 194).  Plaintiff's gait was

normal, she was able to walk on heels and toes without difficulties, and was otherwise able to ambulate without difficulty. (T at 194-95).  Dr. Weiskopf found no limitations as to sitting, standing, or walking. (T at 196).

In light of this evidence, the ALJ did not abuse his discretion in determining that Plaintiff's foot problems imposed no more than a minimal limitation on her ability to perform work-related activities.  Moreover, because the ALJ concluded that Plaintiff had an impairment considered severe under the Act (*i.e.*, mild mental retardation) and continued with the sequential analysis, any arguable error in his findings with respect to Plaintiff's foot problem at step two of the analysis was harmless. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)("[T]he Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); McCartney v. Commissioner of Social Sec., Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); Portorreal v. Astrue, No. C.A. 07-296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).  Accordingly, this Court finds no reversible error with respect

9

to the ALJ's step two analysis.

**b.    Evaluation of Plaintiff's Mental Impairment**

When evaluating the severity of mental impairments, the regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis. Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a).

The technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. See 20 C.F.R. § 404.1520a(c)(3).

These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4).  A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).  If the mental impairment is found to be severe, at the third step of the review, the ALJ must consider whether the claimant's mental impairments meet or medically equal one of the listed impairments.  If the impairments do meet or medically equal one of the impairments set forth in the Listings, the claimant will be found to be disabled. If not, the ALJ is then required to assess the claimant's residual mental functional capacity. § 404.1520a(d)(3).

Residual functional capacity ("RFC") is defined as: "what an individual can still do

despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making an RFC determination, the ALJ considers a claimant's physical abilities, mental abilities, and symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In the present case, the ALJ concluded that Plaintiff had a severe impairment, mild mental retardation, at step 2 of the sequential evaluation process. (T at 15). However, the ALJ found that the impairment did not meet or medically equal one of the impairments set forth in the Listings. (T at 15). The ALJ further determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, except that she was limited to the performance of simple, routine, repetitive work (i.e. unskilled work). (T at 17).

Plaintiff challenges the ALJ's assessment in two principal respects. First, she argues that her impairment meets or medically equals § 12.05 of the Listings. Second, Plaintiff contends that the ALJ's mental RFC determination is not supported by substantial evidence. Each argument will be addressed in turn.

### i.      § 12.05 of the Listings

Impairments listed in Appendix 1 of the Regulations are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir.1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing.  See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Sullivan, 493 U.S. at 530. To satisfy this burden the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b).   Abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B).  Further, the medical reports must indicate physical limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints. Id.

In the present case, Plaintiff argues that her impairments meet or medically equal

12

the impairment set forth in § 12.05 of the Listings (Mental Retardation).  Listing § 12.05 states that "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." The required level of severity for this disorder is met when the requirements in A, B, C, or D of the Listing are satisfied.  In this case, Plaintiff argues that her impairment meets or medically equals subsections B, C, and D of the Listing.

To satisfy subsection B of Listing § 12.05, Plaintiff must have a "valid verbal, performance, or full scale IQ of 59 or less."  Plaintiff notes that she twice demonstrated IQ results below 59.  In November of 1992, Plaintiff completed the Wechsler Intelligence Scale for Children-Third Edition ("WISC-III") with the following results: a verbal IQ of 58, performance IQ of 57, and full scale IQ of 53. (T at 174).  Another WISC-III was completed in June of 1996, indicating a verbal IQ of 65, performance IQ of 54, and full scale IQ of 56. (T at 174).

The ALJ did not discuss these IQ test scores from the 1990s, but did reference a Wechsler Adult Intelligence Scale-Third Edition ("WAIS-III") completed in March of 2004, which indicated a verbal IQ score of 69, performance IQ of 70, and full scale IQ of 67. (T at 175).  The ALJ found that Plaintiff did not satisfy the § 12.05 (B) requirements because she did not "have a valid verbal, performance, or full scale IQ of 59 or less." (T at 16).

This Court finds no error in the ALJ's decision to credit the March 2004 scores and disregard the scores from the 1990s.  At the time of the 1992 IQ test, Plaintiff was seven years old.  She was eleven years old at the time of the 1996 test.  Because the 1992 and 1996 IQ tests were performed when Plaintiff was a child, they are subject to a "currentness"

13

analysis under the applicable regulations.  Specifically, the regulations provide:

> IQ test results must also be sufficiently current for accurate assessment under 112.05. Generally, the results of IQ tests tend to stabilize by the age of 16. Therefore, IQ test results obtained at age 16 or older should be viewed as a valid indication of the child's current status, provided they are compatible with the child's current behavior. IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above. IQ test results obtained before age 7 are current for 2 years if the tested IQ is less than 40 and 1 year if at 40 or above.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.00(D)(10).

Under this regulation, the childhood IQ test results were only considered current for two years from the date of administration (1994 and 1998 respectively).  As such, when the ALJ rendered his decision in October of 2008, he committed no reversible error by disregarding the childhood IQ tests in favor of the 2004 results.

There is no explicit regulatory requirement concerning the "currentness" of adult IQ scores.  Indeed, some courts have concluded that the Commissioner may not reject an adult IQ score on the grounds that it is not current. See Williams v. Astrue, No. 4:07-CV-1649, 2009 WL 214590, at *8 (E.D. Mo. Jan. 29, 2009).  In this case, Plaintiff has no adult IQ scores that satisfy the § 12.05 (B) threshold.  As such, because the childhood IQ scores do not satisfy the currentness requirement, there is no "valid" IQ score of 59 or less.

Plaintiff also argues that her impairment satisfies the requirements of subsection (C) of § 12.05.  To meet Listing § 12.05(C), Plaintiff must show: (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 through 70; and (3) a "physical or other mental

impairment imposing an additional and significant work-related limitation of function."

Plaintiff's March 2004 IQ scores (verbal - 69, performance - 70, full scale - 67) satisfy the threshold requirement of § 12.05 (C).   Likewise, the record establishes significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before Plaintiff reached age 22. Thus, the question is whether Plaintiff has a "physical or other mental impairment imposing an additional and significant work-related limitation of function," as required to satisfy subsection (C) of the Listing.

The Second Circuit "had not yet ruled on what test should be utilized in determining whether a claimant's 'physical or other mental impairment,' other than his low IQ imposes a significant work-related limitation." Edwards v. Astrue, No. 07-CV-898, 2010 WL 3701776, at *6 (N.D.N.Y. Sep't 16, 2010).  The district courts have generally adopted the view of the First, Eighth, and Tenth Circuits to the effect that "a limitation other than low IQ is 'significant' if the claimant suffers from an additional physical or other mental impairment that is 'severe' as that term is defined at step two of the Commissioner's sequential analysis." Id.; see also Baneky v. Apfel, 997 F. Supp. 2d 543, 546 (S.D.N.Y. 1998); Aviles v. Barhart, No. 02-CV-4252, 2004 WL 1146055, at *7 (E.D.N.Y. May 11, 2004); Velezquez v. Chater, No. 93-CV-0264E,1996 WL 107109, at *2 (W.D.N.Y. Mar. 6, 1996).

In this case, the ALJ found one severe impairment at step two of the sequential analysis - mild mental retardation. (T at 15).  The ALJ did not find any severe physical or other mental impairment at step two of the sequential analysis.  For the reasons outlined above, the ALJ's conclusion that Plaintiff's foot problems did not rise to the level of a severe impairment was supported by substantial evidence.  Thus, this Court finds no reversible error with regard to the ALJ's conclusion that Plaintiff had "no other mental or . . . physical

limitations that limits her ability to function." (T at 16).

To satisfy subsection (D) of Listing § 12.05, Plaintiff must establish: a valid verbal, performance, or full scale IQ of 60 through 70, resulting in "marked" limitations or difficulties at least two of the following areas or domains: (1) activities of daily living; (2) maintaining social functioning; (3) maintaining concentration, persistence, or (4) repeated episodes of decompensation, each of extended duration.  As referenced above, the March 2004 IQ tests satisfy the threshold requirement of a valid verbal, performance, or full scale IQ between 60 and 70.   The ALJ concluded that Plaintiff did not meet the remaining subsection (D) criteria because she had no limitation with regard to activities of daily living, no limitation in social functioning, a moderate limitation with respect to concentration, persistence, or pace, and no repeated episodes of decompensation of extended duration. (T at 16).

The ALJ's conclusion in this regard was supported by substantial evidence.  Dr. Dennis Noia, a psychologist, performed a consultative examination in July of 2007.  Dr. Noia noted that, at the time of the exam, Plaintiff was employed as a substitute senior nutrition person, working 16 hours a week. (T at 189).  Plaintiff's manner of relating, social skills, and overall presentation were described as "moderately adequate." (T at 190). Plaintiff reported that she cooked and prepared food, performs general cleaning, does laundry, and goes shopping. (T at 191).  Plaintiff said that she was capable of managing money, driving, and taking public transportation. (T at 191).  Socially, Plaintiff was noted to "get along well with friends and family." (T at 191).  Plaintiff was described as spending "her days doing chores, working, socializing, walking, watching television, and listening to the radio." (T at 191).

Dr. Noia opined that Plaintiff appeared to be capable of understanding and following simple instructions and directions; performing simple tasks with supervision and independently; and maintaining attention and concentration for tasks. (T at 191). He further indicated that Plaintiff could regularly attend to a routine and maintain a schedule, learn simple new tasks, and make simple appropriate decisions. (T at 191). Dr. Noia found that Plaintiff could relate to and interact "moderately well" with others and appeared to be capable of dealing with stress. (T at 191).

P. Kudler, a non-examining State Agency review consultant, reviewed Plaintiff's records and opined that she had moderate limitations with regard to activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (T at 207).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Such reliance is particularly appropriate where, as here, the opinions of these examining and non-examining State agency medical consultants are supported by the weight of the evidence. See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be

17

considered where they are supported by evidence in the record).

Plaintiff challenges the ALJ's assessment, pointing to records showing her difficulties in school and need for special education services. (T at 96-98, 102-103).  Likewise, Dr, Dinah Olsen, a treating physician, indicated some limitation with regard to activities of daily living.  To wit, in May of 2008, Dr. Olsen described Plaintiff as a "relatively new patient . . . ." (T at 231).  Dr. Olsen explained that based upon her initial interaction with her patient, Plaintiff did "need help with daily living skills [and] managing her finances possibly." (T at 231).  Dr. Olsen also indicated that Plaintiff would likely need assistance to use public transportation. (T at 231).  Although this opinion is certainly indicative of some limitation with regard to Plaintiff's mental functioning, it does not establish a "marked" limitation in at least two of the domains required to satisfy subsection (D).[3]  Moreover, substantial evidence (including, in particular, the assessments from the consultative examiner and State Agency review consultant) supports the ALJ's conclusion that Plaintiff did not have marked limitations in at least two of the domains, as required to satisfy § 12.05 (D) of the Listings.

---

[3]The ALJ did not specifically address Dr. Olsen's assessment.  This is a troubling omission given the fact that Dr. Olsen was a treating source.  The ALJ's failure to explicitly address her opinion was error.  However, the error was harmless.  As discussed above, Dr. Olsen did not indicate any marked limitations, but suggested, based upon her preliminary observations, that Plaintiff might "need help" with daily living skills, managing finances, and using public transportation.  Further, even if Dr. Olsen's assessment was viewed as suggesting a marked limitation with respect to activities of daily living, that would be a marked limitation in only one domain, which (without more) does not satisfy § 12.05 (D).  Moreover, substantial evidence in the record (including the assessments of the consultative examiner and State Agency review consultant, as well as Plaintiff's testimony concerning her job performance and activities of daily living) to support a decision not to afford controlling weight to Dr. Olsen's findings.  Accordingly, this Court finds that the ALJ's clear error in failing to discuss Dr. Olsen's assessment was harmless and does not warrant a remand. See Duvergel v. Apfel, No. 99 Civ. 4614, 2000 WL 328593, at *11 (S.D.N.Y. Mar.29, 2002); Walzer v. Chater, 93 Civ. 6240, 1995 WL 791963 at *9 (S.D.N.Y. Sept.26, 1995) (ALJ's failure to discuss a treating physician's report was harmless error where consideration of report would not have changed outcome); see also Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1996) (harmless error rule applies to review of denial of disability benefits).

### ii.    RFC Determination

The ALJ found that Plaintiff has the RFC to perform a full range of work at all exertional levels, but was limited to the performance of simple, routine, repetitive work. (T at 17).  Plaintiff challenges this assessment, again noting Plaintiff's educational difficulties (T at 96-98, 102-103, 194), testimony concerning her need for assistance in activities of daily living (T at 41, 50-51, 231), and Dr. Olsen's observation that Plaintiff needed "help" with daily living skills, managing her finances, and navigating public transportation. (T at 231).

This Court finds that the ALJ's assessment is supported by substantial evidence. As discussed above, Dr. Noia concluded that Plaintiff appeared to be capable of understanding and following simple instructions and directions; performing simple tasks with supervision and independently; and maintaining attention and concentration for tasks. (T at 191).  He further indicated that Plaintiff could regularly attend to a routine and maintain a schedule; learn simple new tasks; and make simple appropriate decisions. (T at 191).  The State Agency review consultant opined that Plaintiff was not significantly limited with regard to her ability to: remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and sustain an ordinary routine without special supervision. (T at 211).

In addition, Plaintiff's testimony indicated work abilities at least partially consistent with the ALJ's RFC assessment.  Plaintiff testified that, as of the time of the hearing, she was working six hours a day, five days a week, as a janitor at Oswego Elementary School.

(T at 31-32).   Although she testified that she experiences foot pain and swelling and described some difficulty concentrating when around large numbers of people, Plaintiff characterized the job as "easy" and stated that she was able to adequately perform her duties and attend to a routine. (T at 33-34, 45, 47).  Plaintiff described her activities of daily living as: going to the movies, playing music, doing laundry, and cleaning. (T at 39).

In light of the foregoing, this Court finds that the ALJ's RFC assessment was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401.

### c.    Credibility

Courts in the Second Circuit have determined pain is an important element in disability claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis

v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

> 1.   [Plaintiff's] daily activities;
> 2.   The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
> 3.   Precipitating and aggravating factors;
> 4.   The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
> 5.   Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
> 6.   Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
> 7.   Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his or her reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No.

21

7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

As discussed above, Plaintiff testified that problems with her feet prevent her from standing for long periods of time. (T at 33).  In particular, Plaintiff explained that she was born with club feet, which swell after she stands for about four hours, making it very difficult to walk. (T at 34).  Plaintiff described tingling and pain in her feet, which lasts for two to three days at a time. (T at 48).  Plaintiff testified that she experiences foot pain on a daily basis and explained that it was brought on by work. (T at 48-49).  She also stated that she has difficulty concentrating "sometimes" when "a lot of people are around talking and not doing their work." (T at 33-34).  Plaintiff also explained that she would "probably have difficulty" if her job routine was changed. (T at 45).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limited effects of the symptoms were not credible to the extent alleged. (T at 18).

This Court finds that the ALJ's assessment was supported by substantial evidence, including (as discussed above) the findings of the consultative examiners, State Agency review consultant, and evidence concerning Plaintiff's work history and daily activities (which included, for example, testimony that she considered her janitorial job "easy" and engaged in vigorous physical activities inconsistent with a disabling foot impairment, such as playing basketball).

Moreover, the ALJ "is entitled to rely not only on what the record says but what the record does not say." Dumas v. Schweker, 712 F.2d 1545, 1553 (2d Cir.1983).  Here, there

was no objective medical evidence of a severely disabling foot impairment.  Dr. Lemley, the treating orthopedist, declined to find the impairment disabling and described Plaintiff as remaining at full duty with regard to her work status. (T at 237).  Other than Dr. Olsen's suggestion that Plaintiff might need "help" with activities of daily living (an assessment contradicted by evidence that Plaintiff cooked, cleaned, shopped, and worked on a regular basis), there is no objective medical evidence to support the claim that Plaintiff lacks the RFC to perform unskilled work.

Plaintiff (rightly) argues that her good work history bolstered the credibility of her testimony.  However, "[w]hile a plaintiff with a good work history is entitled to substantial credibility when claiming they are no longer able to work, the medical record must still support a finding of claimant's disability." Johnson v. Astrue, No. 07-CV-0322C, 2009 WL 3491300, at *7 (W.D.N.Y. Oct. 23, 2009) "In short, a good work history might show a strong financial motivation to work, it cannot be a substitute for evidence of a medically supported disability." Id.  In the present case, for the reasons outlined above, the medical record did not support a finding of disability and, furthermore, Plaintiff's testimony was largely consistent with an ability to perform unskilled work.  Indeed, Plaintiff's excellent work history is indicative of an ability to perform unskilled work and supports the ALJ's determination.

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984)

(citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

The Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984).  The ALJ's decision should therefore be upheld.

### d.   Use of the Grids

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). In this, and other social security cases, the second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

In meeting [his] burden of proof on the fifth step of the

24

> sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

As the Second Circuit explained in Pratts v. Chater, the applicability of the Grids is determined on a case-by-case basis. 94 F.3d at 39 (citing Bapp, 802 F.2d at 605-06). When non-exertional impairments are present, the ALJ must determine whether those impairments "significantly" diminish the claimant's work capacity beyond that caused by

his or her exertional limitations. Id.  A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

In this case, the ALJ concluded that Plaintiff's ability to perform work had been compromised by her non-exertional limitations.  However, he further found that those limitations "have little to no effect on the occupational base of unskilled work at all exertional levels." (T at 19).  Thus, using section 204.00 of the Grids as a framework, the ALJ concluded that Plaintiff was not disabled.  (T at 19).

This Court finds that the ALJ's analysis in this regard was supported by substantial evidence and in accord with applicable law.  "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15.  "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." Id.; SSR 96-9p ("When an individual has been found to have a limited ability in one or more of these basic work activities, it may be useful to consult a vocational resource.").  The ALJ's conclusion that Plaintiff did not have a substantial loss of ability to meet the basic mental demands of competitive, remunerative, unskilled work was supported by substantial evidence, as outlined above, including the assessments of the consultative examiner, State Agency review consultant, and evidence concerning Plaintiff's work abilities and activities of daily living.  This evidence adequately supported the ALJ's conclusion that Plaintiff was capable of

understanding, carrying out, and remembering simple instructions; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting.

### e.   New Evidence

The Appeals Council shall consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); see also § 416.1470(b); Perez v. Chater, 77 F.3d 41, 45 (2d Cir.1996). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); see § 416.1470(b). "

If "the Appeals Council denies review after considering new evidence, the [Commissioner]'s final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." Perez, 77 F.3d at 45. Accordingly, the additional evidence becomes part of the administrative record reviewed by the district court. Id. at 45-46. The role of the district court is to review whether the Appeals Council's action was in conformity with these regulations. See 42 U.S.C. § 405(g) (sentence five); see, e.g., Woodford v. Apfel, 93 F.Supp.2d 521, 528 (S.D.N.Y.2000) (concluding that the "Appeals Council erred when it determined that [the new] evidence was insufficient to trigger review of the ALJ's decision").

To obtain a review of the additional evidence, the claimant must establish that "the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." Sergenton v. Barnhart, 470

27

F.Supp.2d 194, 204 (E.D.N.Y.2007) (citing <u>Lisa v. Sec'y of Health & Human Servs.</u>, 940 F.2d 40, 43 (2d Cir.1991)).

Evidence is "material" if there is "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." <u>Id.</u>  If the Appeals Council fails to consider new, material evidence, "the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence." <u>Shrack v. Astrue</u>, 608 F.Supp.2d 297, 302 (D.Conn.2009).

In this case, Plaintiff asserts that the Appeals Council did not give adequate consideration to a March 2007 finding by the Central New York Development Services Office, in which that office determined that Plaintiff had a developmental disability and qualified for support services. (T at 113-14).  Plaintiff's counsel mistakenly indicates that the finding was made in March of 2009 (after the ALJ's decision was rendered) and appears to suggest that it was submitted as "new evidence" to the Appeals Council. Rather, it appears that the state administrative agency's disability determination was made prior to the ALJ's decision and was part of the record before the ALJ.

However, the issue is moot because, even if the disability determination is considered "new" evidence, there is no reasonable probability that it would have caused the Commissioner to decide the issue differently. The determination of disability is a matter reserved to the Commissioner and the ALJ is not obligated to accept the assessment of any other source in that regard.  <u>See</u> 20 C.F.R. § 404.1504 ("A decision by any non-governmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law.

Therefore, a determination made by another agency that you are disabled or blind is not binding on us."); see also 20 C.F.R. § 416.904; Snell v. Apfel, 177 F.3d 128, 133 (2d Cir.1999) ("[T]he ultimate finding of whether a claimant is disabled and cannot work is reserved to the Commissioner.")(internal quotation omitted); McDonaugh v. Astrue, 672 F. Supp.2d 542, 569 (S.D.N.Y.2009); Crow v. Comm'r of Soc. Sec., No.01-CV-1579, 2004 WL 1689758, at *3 (N.D.N.Y. July 20, 2004).

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ examined the record, afforded appropriate weight to the medical evidence, including Plaintiff's treating providers, consultative examiners, and State Agency review consultants, and afforded Plaintiff's subjective claims of pain and other limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error.  Because the Court further finds that substantial evidence supports the Commissioner's decision, it is respectfully recommended that the Commissioner's Motion for Judgment on the Pleadings be GRANTED and that Plaintiff's Motion for Judgment on the Pleadings be DENIED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   March 4, 2011
       Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C.

§636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY

Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to

consider arguments, case law and/or evidentiary material *which could have been, but were*

*not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc.

v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

March 4, 2011

Victor E. Bianchini
United States Magistrate Judge