UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MISTIE A. BRIGGS,

                              **Plaintiff,**

        v.                                        5:09-CV-1422
                                                 (FJS/VEB)
MICHAEL J. ASTRUE,
Commissioner of Social Security,

                              **Defendant.**
_____

**APPEARANCES**                                    **OF COUNSEL**

**CONBOY, McKAY, BACHMAN**        **PETER L. WALTON, ESQ.**
**& KENDALL, LLP**
407 Sherman Street
Watertown, New York 13601-9990
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **KARLA J. GWINN, ESQ.**
**OFFICE OF REGIONAL**
**GENERAL COUNSEL - REGION II**
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      In a Report and Recommendation dated March 4, 2011, Magistrate Judge Bianchini recommended that this Court grant Defendant's motion for judgment on the pleadings, deny Plaintiff's motion for judgment on the pleadings, and dismiss Plaintiff's complaint. *See* Report and Recommendation ("Report-Rec.") at 2. Currently before the Court are Magistrate Judge Bianchini's

Report and Recommendation¹ and Plaintiff's objections thereto.  *See* Report-Rec.; Plaintiff's Objections ("Pltf. Obj.").

Plaintiff objects to the following: (1) the ALJ's assessment of her foot impairment, (2) the ALJ's finding that her mental impairments are not of Listing-level severity, (3) the ALJ's residual functional capacity ("RFC") determination, (4) the ALJ's assessment of Plaintiff's credibility, and (5) the ALJ's use of the Grids to inform his determination that work exists in the national economy that she can perform.  *See* Pltf. Obj. at 3.

## II. DISCUSSION

**A.    Standard of review**

When reviewing a magistrate judge's report and recommendation, a district court judge "make[s] a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  """If, however, the party makes only conclusory or general objections, or simply reiterates his original arguments, the court reviews the report and recommendation only for clear error."""  *Salmini v. Astrue*, No. 3:06-CV-458, 2009 WL 1794741, *1 (N.D.N.Y. June 23, 2009) (quoting [*Farid v. Bouey*, 554 F. Supp. 2d 301] at 306 [(N.D.N.Y. 2008)] (quoting *McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007))).  The district court also reviews for clear error those portions of a report-recommendation to which a party does not object.  *See Lawton v. Astrue*, No. 7:10-CV-256, 2010 WL 4810604, *1 (N.D.N.Y. Nov. 18, 2010) (citation omitted).  After applying the correct standard of review, "[a] judge of the court may accept, reject, or modify, in whole or in part, the

---

¹ The Court assumes the parties' familiarity with the facts.

findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c).

When reviewing the Commissioner's final decision, a court must determine whether the ALJ applied the correct legal standards and whether substantial evidence supports his decision. *See Urtz v. Callahan*, 965 F. Supp. 324, 326 (N.D.N.Y. 1997) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Absent legal error, a court will uphold the Commissioner's final decision if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).

B.   Plaintiff's objections

   *1. Plaintiff's foot impairment*

In his Report and Recommendation, Magistrate Judge Bianchini noted that Plaintiff's treating orthopedist, Dr. Lemley, concluded that Plaintiff's foot impairment was minimal. *See* Report-Rec. at 7-8. In addition, although Dr. Lemley, in interpreting Plaintiff's x-rays, noted "some degree of metatarsus adductus, increased metatarsal angle, and bunion deformity left greater than right," he determined that these conditions were unlikely to result in chronic pain. *See* Administrative Record ("AR") at 236. Moreover, consultative examiner Dr. Weiskopf indicated that Plaintiff was physically active, playing basketball, cooking, cleaning, and shopping. *See id.* at 194. Plaintiff's gait was normal, and she ambulated without difficulty; as a result, Dr. Weiskopf concluded that she was not limited in the areas of sitting, standing, or walking. *See id.* at 194, 196.

Given Dr. Lemley's and Dr. Weiskopf's findings, the Court concludes that substantial

medical evidence exists to support the ALJ's finding that Plaintiff's foot impairments do not substantially affect her ability to perform basic work-related activities. Accordingly, the Court accepts this portion of Magistrate Judge Bianchini's Report and Recommendation.

### *2. Plaintiff's mental impairment*

Plaintiff contended that she was entitled to Disability and Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") because her condition met or medically equaled subsections B, C, and D of § 12.05 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). To satisfy subsection 12.05(B), a claimant must have an IQ of 59 or less. *See* 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05(B). To satisfy subsection 12.05(C), a claimant must demonstrate significantly below-average intellectual functioning prior to age 22, an IQ between 60 and 70, and a physical or additional mental impairment. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(C). To satisfy subsection 12.05(D), a claimant must demonstrate an IQ between 60 and 70 that results in marked limitations in two of the following domains: (1) activities of daily living; (2) maintaining social functioning; (3) maintaining concentration, persistence, or pace; or (4) repeated episodes of extended decompensation. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(D).

Magistrate Judge Bianchini found that the ALJ was correct when he determined that Plaintiff could not demonstrate that her medical condition met or medically equaled § 12.05 of the Listings. *See* Report-Rec. at 13. Magistrate Judge Bianchini reasoned that substantial evidence supported the ALJ's finding that, although Plaintiff could prove that she met the IQ requirement of § 12.05, she

could not prove that she met any of the other requirements.[2]  *See* Report-Rec. at 16.

In light of Plaintiff's IQ scores, substantial evidence exists to support the ALJ's finding that Plaintiff's mental limitations fall short of the severity required to qualify for benefits under Listing § 12.05(B).  Other substantial medical evidence supports the ALJ's determination that Plaintiff does not meet the requirements of § 12.05.  First, as previously discussed, substantial evidence indicates that Plaintiff's foot impairment is not severe, which precludes Plaintiff from meeting the requirements of § 12.05(C).  In addition, Dr. Noia concluded that Plaintiff was capable of understanding and following simple instructions and directions, performing simple tasks, and maintaining attention and concentration.  *See* AR at 191.  He also opined that Plaintiff could maintain a schedule and regularly attend to a routine, learn new tasks, and make simple appropriate decisions.  *See id*.  He further determined that Plaintiff could relate to others "moderately well" and that she seemed able to handle some level of stress.  *See id*.  Dr. Noia's findings indicate that Plaintiff does not meet the criteria of § 12.05(D).

P. Kudler, a non-examining State Agency consultant, also reviewed Plaintiff's records and concluded that she experienced moderate limitations regarding activities of daily living; mild difficulties maintaining social functioning; and moderate difficulties in maintaining concentration,

---

[2] The ALJ used Plaintiff's 2004 IQ test, in which she scored a verbal IQ of 69, a performance IQ of 70, and a full scale IQ of 67.  *See* AR at 175.  The ALJ disregarded Plaintiff's IQ scores from the 1990s, which were lower, for lack of recency.  Plaintiff was seven years old at the time of her 1992 IQ test and eleven years old at the time of her 1996 test.  The regulations subject childhood (defined as ages seven through sixteen) IQ test results to a "currentness" test, in which the results are only considered current for two years from the administration of the test. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(D)(10).  Consequently, Plaintiff's childhood tests ceased to be current in 1994 and 1998, respectively.  Since Plaintiff was older than sixteen for her 2004 IQ test, and there is no "currentness" requirement for adult IQ tests, the 2004 score represented Plaintiff's only valid score in 2008, when the ALJ filed his decision.

persistence, or pace. *See id*. at 207. P. Kudler's opinion also represented substantial evidence that the combination of Plaintiff's physical and mental problems were not severe enough to meet the requirements of § 12.05(D).[3]

Accordingly, the Court accepts this portion of Magistrate Judge Bianchini's Report and Recommendation.

### 3. Plaintiff's RFC

Magistrate Judge Bianchini determined that substantial evidence in the record supported the ALJ's RFC assessment of Plaintiff. *See* Report-Rec. at 19. The ALJ found that Plaintiff could perform a full range of unskilled work. *See* AR at 17. Magistrate Judge Bianchini pointed to Dr. Noia's opinion that Plaintiff could understand and follow simple directions, perform simple tasks either with supervision or independently, and maintain concentration for tasks. *See* Report-Rec. at 19. In addition, Dr. Noia opined that Plaintiff could attend to a routine and maintain a schedule, learn simple new tasks, and make appropriate decisions. *See* AR at 191.

Furthermore, Magistrate Judge Bianchini found that the State agency consultant supported the ALJ's RFC determination of Plaintiff. *See* Report-Rec. at 19. In particular, the State agency consultant concluded that Plaintiff was not significantly limited regarding her ability to understand, remember, and carry out short and simple instructions; maintain attention and concentration for

---

[3] Magistrate Judge Bianchini noted that the ALJ was entitled to rely on P. Kudler's opinion, where, as here, evidence in the record supported the non-examining consultant's opinion. *See* Social Security Ruling ("SSR") 96-6p, 1996 WL374180, *2 (July 2, 1996) (stating that the opinions of non-examining physicians "can be given weight only insofar as they are supported by evidence in the case record . . .").

extended periods; perform activities within a schedule; and sustain an ordinary routine. *See* AR at 211.

Magistrate Judge Bianchini also concluded that Plaintiff's hearing testimony indicated that she possessed work abilities that were consistent with the ALJ's RFC assessment. *See* Report-Rec. at 19. Plaintiff testified that she was working approximately thirty hours per week as a janitor at Oswego Elementary School. *See* AR at 31-32. She testified to experiencing foot pain and swelling, as well as decreased concentration when around large groups of people, but she also characterized the job as "easy" and stated that she could perform her duties and maintain a routine. *See* AR at 33-34, 45, 47. Plaintiff stated that her daily activities included going to the movies, washing laundry, and cleaning. *See* AR at 39.

Upon review of the record and of Magistrate Judge Bianchini's Report and Recommendation, the Court finds that the ALJ followed the correct procedure when, in light of the fact that Plaintiff had no past relevant work, he determined that Plaintiff could perform unskilled work. Both the ALJ and Magistrate Judge Bianchini cited evidence in the record that was relevant to the considerations set forth in the Medical-Vocational Guidelines for determining the RFC of mentally impaired claimants. An examination of this evidence revealed that substantial evidence, in the form of medical opinions and Plaintiff's own testimony, supported the ALJ's finding that, although Plaintiff suffered from some limitation, she could perform unskilled work.[4] Accordingly,

---

[4] Regarding PA-C Olsen's opinion, the regulations do not recognize a physician's assistant as a medically acceptable source. *See* SSR 06-03P, 2006 WL 2329939, *3 (Aug. 9, 2006). Although her opinion may still provide insight as to the severity of Plaintiff's disability and her ability to function, the regulations do not provide specific guidelines as to how ALJs should treat evidence from medical sources who are not acceptable medical sources. *See id*. at *4. As a consequence, in light of the evidence supporting the ALJ's RFC analysis, it cannot be said that

(continued...)

the Court accepts this portion of Magistrate Judge Bianchini's Report and Recommendation.

### *4. Plaintiff's credibility*

Magistrate Judge Bianchini found that substantial evidence supported the ALJ's assessment that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not credible to the extent alleged. *See* Report-Rec. at 22. Magistrate Judge Bianchini referred to reports from Drs. Lemley and Weiskopf, and Mr. Kudler, as well as Plaintiff's own testimony, as evidence that supported the ALJ's conclusion. *See id*. In particular, Magistrate Judge Bianchini described Plaintiff's daily activities and her assessment of her job as "easy" as corroborative of the ALJ's determination. *See id*.

In addition, Magistrate Judge Bianchini stated that the lack of objective medical evidence of a severely disabling foot impairment also supported the ALJ's conclusion. *See* Report-Rec. at 23; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) (stating that "[t]he Secretary is entitled to rely not only on what the record says, but also on what it does not say" (citations omitted)). Only PA-C Olsen's suggestion that Plaintiff might need help with some daily living activities indicated that Plaintiff suffered from any limitations concerning her feet. However, the record contained no evidence, such as a test result or more serious diagnosis, that Plaintiff lacked the ability to perform unskilled work. *See id*.

Given the opinions of Drs. Lemley and Weiskopf, and Mr. Kudler, as well as Plaintiff's

---

[4](...continued)
the ALJ's failure to incorporate PA-C Olsen's opinion constitutes reversible error. Accordingly, the Court accepts this portion of Magistrate Judge Bianchini's Report and Recommendation.

hearing testimony, and the lack of objective clinical or diagnostic evidence, substantial evidence supports the ALJ's finding that Plaintiff's statements of pain could not overcome the medical evidence to the contrary; therefore, no further articulation of Plaintiff's credibility was necessary. *See Francis v. Astrue*, No. 3:09-CV-1826, 2010 WL 3432839, *4 (D. Conn. Aug. 30, 2010) (holding that, where an ALJ assesses a plaintiff's subjective statements of pain in light of medical evidence that indicates that the plaintiff can work and finds that the plaintiff's statements cannot overcome the medical evidence to the contrary, "there is no need for further articulation by the ALJ regarding the plaintiff's credibility"). In addition, the ALJ examined the 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi) considerations where he discussed Plaintiff's alleged symptoms in light of her daily activities and where he noted the location, frequency, and intensity of Plaintiff's foot pain and the precipitating and aggravating factors behind it. *See* AR at 17. Accordingly, the Court accepts this portion of Magistrate Judge Bianchini's Report and Recommendation.

### *5. Use of the Grids*

At step five of the five-step sequential evaluation process, the ALJ considers a claimant's vocational factors (age, education, and work experience), together with her RFC, to determine whether she can perform work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 416.920(g). The ALJ may rely on the Medical-Vocational Guidelines (the "Grids") as part of his step-five determination where the claimant's limitations have not significantly compromised her occupational base. *See* 20 C.F.R. § 416.969a(d) (providing that, where a claimant suffers from a nonexertional limitation, and where exertional problems also affect her working ability, the ALJ

may use the Grids to determine whether the claimant is capable of work); 20 C.F.R. Part 404, Subpart P, Appendix 2, Section 200.00(e) (providing that, where a claimant has strength limitations and nonexertional limitations, the ALJ may evaluate her work ability in light of the Grids); *see also Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986) (holding that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines")

Magistrate Judge Bianchini concluded that substantial evidence in the record supported the ALJ's use of the Grids to evaluate Plaintiff. *See* Report-Rec. at 26. The ALJ concluded that Plaintiff's non-exertional limitations had no effect on her ability to perform at all exertional levels. *See* AR at 19. Magistrate Judge Bianchini found that the opinions of Dr. Weiskopf and P. Kudler, as well as the evidence regarding Plaintiff's work abilities and activities of daily living, supported the ALJ's finding. *See* Report-Rec. at 26. In addition, this evidence supports the ALJ's finding that Plaintiff was capable of understanding, carrying out, and remembering simple instructions; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting. *See* SSR 85-15, 1985 WL 56857, *4 (1985).

Moreover, Plaintiff's objection regarding her foot issues falters because the ALJ already determined that any limitations that Plaintiff's feet caused did not affect her ability to perform basic work activities. Furthermore, Plaintiff's objection as to the ALJ's implication that her limitation was severe is unpersuasive because, although the ALJ found that it was a severe impairment, he also found that it was not of Listings-level severity. Accordingly, the Court accepts this portion of Magistrate Judge Bianchini's Report and Recommendation.

*6. New Evidence*

Magistrate Judge Bianchini stated that the evidence in question, the Central New York Development Services Office's ("CNYDSO") finding that Plaintiff had a developmental disability and qualified for support services, was actually made in March of 2009, but Plaintiff had claimed that it was from March 2007. *See* Report-Rec. at 28. Consequently, it was part of the record before the ALJ and not new evidence. *See id*.[5] Plaintiff did not object to this finding. Consequently, the Court reviewed Magistrate Judge Bianchini's determination regarding this issue for clear error. Having done so, the Court finds that this evidence is not new and accepts this portion of Magistrate Judge Bianchini's Report and Recommendation.

### III. CONCLUSION

Accordingly, after carefully considering Magistrate Judge Bianchini's Report and Recommendation, Plaintiff's objections thereto, as well as the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Bianchini's March 4, 2011 Report and Recommendation is **ACCEPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

---

[5] Even if the CNYDSO's determination were new evidence, however, Magistrate Judge Bianchini concluded that there was no reasonable probability that it would have caused the Commissioner to decide the issue differently because the disability determination is for the Commissioner to make alone, and he is not obligated to accept the opinion of any other source regarding a claimant's disability. *See* Report-Rec. at 28 (citing 20 C.F.R. § 404.1504).

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED**, and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: July 7, 2011
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge